[Crim. No. 26245. Second Dist., Div. Five. Mar. 14, 1975.]

In re JAMES THOMAS BEAL on Habeas Corpus.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Andrew D. Amerson, Deputy Attorneys General, for Respondent.

## OPINION

ASHBY, J.—Petitioner pleaded guilty to possession of heroin in violation of Health and Safety Code section 11350 and was sentenced to imprisonment in the state prison. His appeal from that judgment, pursuant to Penal Code section 1538.5, subdivision (m), resulted in affirmance of the conviction (*People* v. *Beal,* 44 Cal.App.3d 216 [118 Cal.Rptr. 272]).

In this petition for habeas corpus petitioner contends he was deprived of the effective assistance of counsel and due process of law at his probation and sentencing hearing. He alleges that his trial counsel showed him the probation report only 10 minutes prior to the hearing, did not discuss the report with him, and did not point out to the court three alleged inaccuracies in the probation report. Petitioner also alleges that prior to the hearing petitioner showed counsel a letter from a narcotics prevention project stating that its representatives would meet with petitioner if he obtained a court order, and that trial counsel stated to petitioner he would obtain such an order, but did not do so.

The alleged inaccuracies in the probation report are as follows:

(1) The probation report states that although petitioner indicated to the probation officer that he had applied to the Bureau of Indian Affairs for a work program which would involve financial assistance and employment as a painter, "Jack Mauterer, Bureau of Indian Affairs, indicates that their bureau is no longer interested in the defendant for their program. He indicates the defendant is 1/64th Indian and does not qualify for their program but he took an interest in the defendant, advanced him $50.00 which the defendant apparently took and purchased heroin on the streets the next day."

The petition contains a declaration from Jack Mauterer that he did not tell the probation officer the Bureau of Indian Affairs was not interested in petitioner; that he does not have authority to determine petitioner's present eligibility; that he would have been willing to provide job placement assistance for petitioner if he had been placed on probation; and that he did not tell the probation officer that money issued to petitioner had been used to purchase heroin, he only speculated on that possibility.

(2) The probation report states that Linda Burnett, who had been

living in a common law relationship with petitioner off and on for six years, told the probation officer that the longest period he had stayed with her was two months because he leaves when he is using heroin; that when he lived with her she supported him; and that "I've had it clear up past my ears. I don't know if I will allow him to come back. I'm not certain at this point. He promised me he wasn't going to take drugs or hurt us anymore and I couldn't count the times he has told us this. He enjoys heroin too much to ever give it up."

The petition contains a declaration of Linda Burnett Schuman that she did not tell the probation officer the longest period she stayed with petitioner was two months; that she did not tell the probation officer she supported petitioner when they lived together; that she did not make the statement quoted in the probation officer's report, or anything of the sort; and, that although remarried, she would welcome petitioner in her home.

(3) The probation report refers to one of petitioner's prior convictions as follows:

"1-26-73 TEXAS PD—LOITERING
"(Defendant found guilty and sentenced to 18 days in county jail—served 10 days prior to his return to California. Defendant found to be standing across the street at 3:00 A.M. from a drug store that had just been robbed. Defendant's hands were found to be bloody and numerous puncture wounds were observed in the Defendant's neck, knee and arm area.)"

Petitioner asserts that this description falsely implies he was involved in the burglary of the store. The petition contains copies of arrest reports from Tyler, Texas, apparently obtained from the probation officer, which indicate that two other suspects admitted the burglary of the store, that petitioner had originally been a suspect but no case was proved against him, and that although he had a recent injury on his arm it was not bleeding, and the numerous needle marks on his arms appeared to be old.

No challenge is made to the accuracy of the remaining portions of the probation officer's report. They indicate that the instant offense occurred two days after petitioner had been released on outpatient status from the California Rehabilitation Center. His commitment to the CRC had apparently followed the revocation of probation, in May 1973, on a 1970

conviction of second degree burglary. Petitioner had also pleaded guilty to violation of Health and Safety Code section 11364 in April 1973, for which he was granted probation with 30 days in county jail. Petitioner had also suffered the following prior convictions: January 1965, illegal entry and tampering with a vehicle ($250 or 25 days); November 1965, forgery (2 years federal probation); December 1968, forgery (6 months county jail); September 1968, failure to provide (180-day county jail sentence suspended, probation revoked and sentence imposed in February 1969); and an additional loitering conviction in Texas in April 1972 ($300 fine). Additionally, petitioner had several arrests, traffic warrants, and bench warrants for failure to appear.

As to petitioner's personal history the probation report indicates the following facts, largely supplied by petitioner himself: Petitioner first began using heroin at age 13. Formal education terminated at tenth grade, whereupon he entered military service. In the service he became involved with morphine, supplied to him by a friend who was a medic. After 18 months' service he received an undesirable discharge for fighting with a sergeant and absence without leave. Petitioner admitted that he had used heroin between 1966 and 1970[1] and again in 1973, his habit costing $50 to $70 a day.

As to the present offense petitioner stated that after being released from CRC he felt he owed himself a celebration. The facts of the present offense, as indicated both by the probation report and the record on appeal in *People* v. *Beal, supra,* are that petitioner was observed staggering from the Spic and Span Motel in El Monte. After detention he was observed showing symptoms of being under the influence of a narcotic. He had a balloon containing heroin in his wallet, a hypodermic needle and syringe in his waistband, and had placed another hype kit under his seat in a car. He had numerous recent puncture wounds on his forearm, wrists and hands, only two days after release from the CRC. The probation report states that according to the El Monte police, the Spic and Span Motel is a known residence of various narcotics users.[2]

Petitioner stated to the probation officer that CRC "is not what I want but rather than go to the joint I'll go through that program." The probation report further states that petitioner's parole agent believes

---

[1]On the occasion of his prior conviction in 1970, he had told the probation officer that he used LSD on numerous occasions.

[2]Petitioner also had a reputation for narcotics use and residing with other "junkies" in Tyler, Texas, where he lived in 1972, according to Tyler police.

petitioner is not amenable to parole supervision in the community and represents a threat to the community in light of his record.

The probation officer's evaluation, recommending state imprisonment, was: "Appearing for consideration is a recent parolee with an extensive record for convictions of forgery, failure to provide, possession of counterfeit notes, burglary and narcotics. An admitted heroin user since age 13, he has experienced difficulty in adjusting to the role of a responsible, law abiding citizen and has developed a lifestyle of aimlessness and lack of direction. His background is reflective of one who has continued unchecked on a path of disregard for all those with authoritative responsibility, as demonstrated by his military service, his probation record, his attitude toward the California Rehabilitation Center and the present offense."

The reporter's transcript of the probation and sentencing hearing is included in the record on appeal in *People* v. *Beal, supra,* 44 Cal.App.3d 216, of which we take judicial notice. The record indicates that petitioner's trial counsel did state that he and petitioner had read the report. Counsel forcefully argued on petitioner's behalf that petitioner had simply had an inadequate opportunity to readjust to the community after his release from CRC, that petitioner had learned a trade while previously in CRC, that only a small amount of contraband and no other criminal conduct were involved, and he urged that petitioner be considered for further narcotics commitment or possibly a county jail term followed by a live-in drug program. Without specific comment on the probation report, the court sentenced petitioner to state prison for the term prescribed by law.

### DISCUSSION

In California a criminal defendant has the right to testify, to call witnesses or to produce evidence at the probation and sentencing hearing in order to rebut information in the probation officer's report. (*People* v. *Valdivia,* 182 Cal.App.2d 145, 149 [5 Cal.Rptr. 832].) The time for exercising that right is at the hearing itself. As with claims of newly discovered evidence after judgment (e.g., *People* v. *Greenwood,* 47 Cal.2d 819, 821 [306 P.2d 427]), we view with disfavor the attempt to raise for the first time after sentencing the claim that the probation report was inaccurate. To permit prisoners to wait until after the probation and sentencing hearing to challenge the probation report would open the door to wasteful and duplicative procedures and abuse of court

processes. There may be situations in which a prisoner is entitled to a new sentencing hearing, but only where he shows that: (1) material false information was (2) relied upon by the sentencing judge, and (3) the defendant had no opportunity at the time of sentencing to correct such false information. (*Townsend* v. *Burke,* 334 U.S. 736, 740-741 [92 L.Ed. 1690, 1693-1694, 68 S.Ct. 1252].) This is not such a case, however.

■ First, the allegations of the petition are insufficient to show that petitioner had no opportunity at the time of sentencing to raise the issues he now attempts to raise. In this respect the petition is as significant for what it does *not* allege as for what it does allege.

Although alleging that he received the probation report 10 minutes before the hearing, petitioner does not allege that he did not or could not read the report in that time.[3] The record shows that counsel read the report and forcefully argued on petitioner's behalf. Although claiming that counsel never discussed the report with him, petitioner was present in the courtroom with counsel, and petitioner does not allege that he attempted to discuss the matter with counsel. Petitioner remained silent through the hearing.

Petitioner is not an inexperienced criminal defendant. He has suffered numerous prior convictions and is not a stranger to the courtroom or to probation reports and sentencing hearings. If he thought the report contained false statements he should have spoken up about them. If he thought he needed more time to prepare for the hearing or to make inquiries concerning the statements made in the report, he should have asked for a continuance. The truth or falsity of the statements attributed to Linda Burnett and Jack Mauterer in the probation report, and the circumstances of the Tyler arrest were known or should have been known by petitioner at the time of the hearing. Thus, petitioner knew whether it was true that he was supported by Linda Burnett and never stayed with her for more than two months at a time because of his heroin habit, and whether it was true that petitioner had taken BIA money and used it to purchase heroin. If these statements were false, petitioner could have spoken up to his attorney or to the trial judge about it. Having let these statements be considered without objection at the hearing, petitioner cannot now claim that the statements were never in fact made to the probation officer. (See *People* v. *Taylor,* 260 Cal.App.2d 393, 396 [67 Cal.Rptr. 180]; *Hess* v. *United States* (8th Cir. 1974) 496 F.2d 936, 940.)

---

[3]The report contained 13 pages of text in large type.

It could be argued that petitioner had no way of knowing, at the time of the hearing, whether Jack Mauterer and Linda Burnett made the statements attributed to them by the probation officer. That is not the point. The important fact, so far as the sentencing decision was concerned, was whether the facts alleged in those statements were true. For instance, if it was false that petitioner lived with Linda Burnett for only two months at a time because of his heroin habit, petitioner was in a position, at the time of the hearing, to tell his attorney or the court: "I do not know if Linda Burnett said that to the probation officer, but if she did, it is not true." Furthermore, if he doubted she had made any such statement, he could have asked for a continuance to investigate the matter. The merits of the matters referred to in the statements were within petitioner's knowledge. The very purpose of the hearing was to enable petitioner to inquire about them. He cannot sit silently by at the time when he has a duty to speak and then request a new hearing afterwards by claiming that the statements were never made.

The authorities cited by petitioner are not persuasive because in those cases the defendant either challenged the information in the probation report at the time of sentencing or had no opportunity to do so. In *Townsend* v. *Burke, supra,* 334 U.S. 736, 741 [92 L.Ed. 1690, 1693], the trial judge relied on several prior charges which had not resulted in conviction, the defendant was without counsel, and the Supreme Court placed its stress on "the careless or designed pronouncement of sentence on a foundation so extensively and materially false, *which the prisoner had no opportunity to correct by the services which counsel would provide,* . . ." (Italics added.) In *Baker* v. *United States* (4th Cir. 1968) 388 F.2d 931, 932, the presentence report was not disclosed to the defendant or counsel, under federal criminal practice rules permitting nondisclosure. In *United States* v. *Tucker,* 404 U.S. 443, 444-445 [30 L.Ed.2d 592, 594-595, 92 S.Ct. 589], and *Garrett* v. *Swenson* (8th Cir. 1972) 459 F.2d 464, 465, it was only subsequent to the sentencing that prior convictions relied upon by the judge were determined or alleged to be constitutionally invalid. In *United States* v. *Weston* (9th Cir. 1971) 448 F.2d 626, 629, 634, the defendant personally and through her counsel denied the information in the report at the time of the hearing, and the basic holding of the case was that certain anonymous hearsay information was of so little value that the trial court should not have relied upon it and the defendant should not have had the burden to disprove it. Also distinguishable is *United States* v. *Myers* (3d Cir. 1967) 374 F.2d 707, 709, where trial counsel failed to object when the trial court referred to three strongarm robbery priors, although the probation report on its face

showed that only one of these charges had resulted in conviction. In that case the court determined that competent counsel had a duty to object to an erroneous legal conclusion belied by the record. But in the instant case the likely truth or falsity of Jack Mauterer's and Linda Burnett's statements, and the circumstances of the Tyler arrest were within the knowledge of petitioner himself, and it is he who should have spoken up at the time of the hearing if he thought those statements were false.

Our second reason for finding no grounds for relief in this case is that the petition when read in light of the record is insufficient to show that the trial judge relied upon the inaccuracies now claimed by petitioner. Petitioner alleges three specific inaccuracies but does not contest the accuracy of the remaining portions of the probation report. The three errors claimed by petitioner are but minor blemishes on an otherwise ugly record. Petitioner's own conduct and statements showed him to be unfit for probation, regardless of whether he was or was not technically eligible for BIA assistance or other rehabilitative programs.[4] The instant offense occurred only two days after petitioner's release from CRC. Upon arrest petitioner already had numerous recent puncture wounds in his arm. Petitioner told the probation officer he felt he was entitled to a "celebration" upon release from the CRC. He further stated that CRC was not what he wanted but he would take it "rather than go to the joint." Linda Burnett's alleged statements concerning petitioner's drug problem were merely cumulative of petitioner's attitudes indicated by his own statements and conduct. The loitering conviction in Tyler, Texas, was an insignificant part of a long criminal record involving far more serious offenses, and the description of it was only arguably misleading.

Neither the probation report nor the trial judge placed any special emphasis on the three allegedly inaccurate statements. The probation officer based her conclusion on petitioner's "military service, his probation record, his attitude toward the California Rehabilitation Center and the present offense," and not on Jack Mauterer's or Linda Burnett's statements or the Tyler loitering conviction. The trial judge did not specifically refer to any of these statements when he sentenced petitioner. In each of the cases cited by petitioner the sentencing judge specifically referred to prior convictions or other adverse facts which were later shown to be invalid or false. (*Townsend* v. *Burke, supra,* 334 U.S. 736, 739-740 [92 L.Ed. 1690, 1692-1693]; *United States* v. *Myers, supra,* 374 F.2d 707, 709; *Baker* v. *United States, supra,* 388 F.2d 931;

---

[4] In fact the probation report noted that petitioner had a 50 percent chance of being accepted again by the CRC.

932; *United States* v. *Weston, supra,* 448 F.2d 626, 629-630; *Garrett* v. *Swenson, supra,* 459 F.2d 464, 465. See also *United States* v. *Tucker, supra,* 404 U.S. 443, 447 [30 L.Ed.2d 592, 596].) Petitioner must show more than mere speculation that the allegedly false information was material and was relied upon by the sentencing judge. We find nothing but such speculation in the instant case.

The petition for writ of habeas corpus is denied.

Stephens, Acting P. J., and Hastings, J., concurred.