STATE OF HAWAII, Plaintiff-Appellee, *v.* JOSEPH
FREITAS, JR., also known as Joseph Junior Freitas,
Joseph Giggs Freitas, John Mori Freitas and John
Lawrence Freitas, Defendant-Appellant

NOS. 6986 AND 6987

STATE OF HAWAII, Plaintiff-Appellee, *v.* KENNETH L.
KARREN, Defendant-Appellant

NO. 7005

NOVEMBER 9, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICE MARUMOTO AND CIRCUIT
JUDGE LUM ASSIGNED BY REASON OF VACANCIES

264

OPINION OF THE COURT BY MENOR, J.

S.C. No. 6986, State of Hawaii v. Joseph Freitas, Jr., and S.C. No. 7005, State of Hawaii v. Kenneth L. Karren, have been consolidated for purposes of appeal.

On January 10, 1978, defendant Freitas, in Cr. No. 50480, Circuit Court of the First Circuit, was found guilty by a jury of the offense of burglary in the first degree, HRS § 708-810(1)(c). On January 29, 1978, in Cr. No. 50479, Circuit Court of the First Circuit, he entered a plea of guilty to the charge of burglary in the second degree, HRS § 708-811. At the time of sentencing, on March 29, 1978, the trial court inquired as to whether defendant Freitas should be sentenced

under the provisions of Act 181, S.L.H. 1976 [now HRS § 706-606.5], which provides:

Sentencing of repeat offenders. Notwithstanding section 706-669 and any other law to the contrary, any person convicted under sections 707-701 relating to murder, 707-710 relating to assault in the first degree, 707-720 relating to kidnapping, 707-730 relating to rape in the first degree, 707-733 relating to sodomy in the first degree, *708-810 relating to burglary in the first degree,* 708-840 relating to robbery in the first degree, 712-1241 relating to the promoting of a dangerous drug in the first degree, 712-1242 relating to the promoting of a dangerous drug in the second degree, or 712-1244 relating to the promoting of a harmful drug in the first degree, *who has a prior conviction for the same offense in this or another jurisdiction,* shall be sentenced for each conviction after the first conviction to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:

(1) Second conviction for the same offense — 5 years;

(2) Third conviction for same offense — 10 years.

The sentencing court may impose the above sentences consecutive to any other sentence then or previously imposed on the defendant." (Emphasis added.)

Defense counsel objected on the grounds (1) that the defendant had not been given notice of the intended application of Act 181, and (2) that an evidentiary hearing was required to prove his prior conviction. The trial court thereupon continued the sentencing hearing over defense counsel's objections to April 12, 1978. Following the conclusion of the rescheduled hearing, the trial court specifically found that defendant Freitas had been convicted of burglary in the first degree on May 28, 1975, and that he had been represented by counsel at the time of his prior conviction. The trial court then sentenced defendant Freitas in Cr. No. 50480 (burglary in the first degree) to ten years imprisonment without possibility of parole for a period of five years pursuant to Act 181, and to a concurrent term of five years in Cr. No. 50479 (burglary in the

second degree). Defendant Freitas appeals from the judgment and sentence of the circuit court.

On March 7, 1978, defendant Karren, in Cr. No. 50301, Circuit Court of the First Circuit, entered a plea of guilty to burglary in the first degree, HRS § 708-810(1)(c). At his sentencing hearing on April 19, 1978, the State moved for the invocation of the provisions of Act 181 and sought a continuance of the proceedings in order that witnesses from the island of Hawaii could appear. The matter was continued over the objection of defense counsel until April 26, 1978. At that hearing the trial court specifically found that defendant Karren had been convicted of burglary in the first degree on December 11, 1973, and that he had been represented by counsel at the time of his prior conviction. The court thereupon sentenced the defendant to ten years imprisonment without possibility of parole for a period of five years. The defendant appeals.

The defendants have raised the following questions on appeal:

1. Are the due process safeguards of *State v. Kamae*, 56 Haw. 628, 528 P.2d 1200 (1976), applicable to sentencing proceedings under Act 181? If such safeguards are applicable, were the proceedings in these cases adequate?

2. Does the term "prior conviction" in Act 181 include convictions which occurred before the effective date of Act 181?

3. Is Act 181 unconstitutional in that it violates the prohibition against cruel and unusual punishment?

4. Is Act 181 unconstitutional in that it violates defendants' rights to equal protection?

5. Does Act 181 deny defendants due process by limiting the discretion of the trial court in sentencing?

6. If Act 181 is found to be unconstitutional or not applicable to defendant Freitas, was sentencing in Cr. No. 50479 fatally infected by sentencing in Cr. No. 50480?

## I.

We consider first the constitutionality of Act 181, for if it is found to be invalid with respect to the defendants the sentences imposed thereunder must be set aside.

The defendants do not question the established power of the legislature to prescribe penalties for the violation of the criminal laws, and they further concede that recidivist statutes are not per se violative of constitutional provisions. *Spencer v. Texas*, 385 U.S. 554 (1967). They do contend, however, that Act 181, as it applies to them, is unconstitutional in that it contravenes the Eighth Amendment's prohibition against cruel and unusual punishment.

The question of what constitutes an adequate penalty necessary for the prevention of crime is addressed to the sound judgment of the legislature and the courts will not interfere with its exercise, unless the punishment prescribed appears clearly and manifestly to be cruel and unusual. Thus, the United States Supreme Court has said:

> "[P]rominence is given to the power of the legislature to define crimes and their punishment. We concede the power in most of its exercises. We disclaim the right to assert a judgment against that of the legislature of the expediency of the laws or the right to oppose the judicial power to the legislative power to define crimes and fix their punishment, unless that power encounters in that exercise a constitutional prohibition . . . . The function of the legislature is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of their wisdom or propriety. . . ." *Weems v. United States*, 217 U.S. 349, 378-378-379 (1910).

But where "the sentence prescribed by statute is cruel and unusual within the meaning of the Eighth Amendment, the statute itself is unconstitutional and any sentence imposed thereunder must be set aside." *Gallego v. United States*, 276 F.2d 914, 918 (9th Cir. 1960).

The standard by which punishment is to be judged under the "cruel and unusual" punishment provisions of both the

United States and Hawaii Constitutions is, whether, in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community. *State v. Iaukea*, 56 Haw. 343, 537 P.2d 724 (1975). And so long as the penalty is reasonably proportionate to the particular crime and not so severe as to shock the general conscience, its constitutionality will be upheld. *State v. Espinosa*, 101 Ariz. 474, 421 P.2d 322 (1966).

Other courts have developed certain techniques to aid them in their determinations. Thus, in *In re Lynch*, 8 Cal. 3d 410, 104 Cal. Rptr. 217, 503 P.2d 921 (1973), the California Supreme Court, considering a statute prescribing an increased penalty for a second offense of indecent exposure, applied a three-pronged test to determine whether the punishment prescribed was violative of the constitutional prohibition against cruel and unusual punishment. The court considered (1) the nature of the offense and/or the offender, with particular regard to the degree of danger posed by both to society; (2) the extent of the challenged penalty as compared to the punishments prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the challenged penalty as compared to the punishment prescribed for the same offense in other jurisdictions. *See also Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973) *cert. denied*, 415 U.S. 938, 983, *reh. denied*, 416 U.S. 916; *Commonwealth v. Jackson*, 369 Mass. 904, 344 N.E.2d 166 (1976); *People v. Broadie*, 371 N.Y.S.2d 471, 332 N.E.2d 338 (1975); *In re Foss*, 10 Cal. 3d 910, 112 Cal. Rptr. 649, 519 P.2d 1073 (1974). While such interpretive techniques are neither conclusive nor dispositive of the question of whether a certain prescribed penalty is cruel and unusual within the meaning of the Eighth Amendment, they are nevertheless helpful guidelines for inquiry. *Bosco v. Justice Court of Exeter*, 77 Cal. App. 3d 179, 143 Cal. Rptr. 468 (1978). Quite obviously, the nature of the offense and the danger the offender poses to society are the key factors in this determination. *People v. Broadie, supra*. Moreover, each prong of this test is not to be viewed in

isolation and applied, as the defendants have attempted to do in this case, independently of each other.

The defendants argue that inasmuch as the conduct proscribed by HRS § 708-810(1)(c),[1] under which they were charged, is nonviolent in nature and because the Hawaii Penal Code itself recognizes the absence of harm to the victim as a mitigating factor in the sentencing process, *see* HRS § 706-621, the punishment to which they have been exposed under Act 181 is excessive and disproportionate to the crime for which they have been charged and convicted. We disagree.

While the offense of burglary in the first degree under subsection(c) may be committed in a nonviolent manner, particularly where only property rights are involved, it does not necessarily follow that the individual charged under that subsection was not armed, or that he was not capable and prepared to inflict bodily harm. It is not an unusual case where an intruder bent primarily on theft has gone beyond his original design and committed crimes against the person once the illegal entry has been accomplished. The potential for violence is ever present in this type of situation. Moreover, the offense proscribed under subsection (c) is not limited to an invasion of property rights. Thus, unlawful entry with the intent to commit assault, rape, sodomy, or even attempted murder has been charged and is properly indictable under this subsection of the statute. In our view and, more importantly, in the view of the legislature, the crime of burglary in

---

[1] HRS § 708-810 provides:

"Burglary in the first degree. (1) A person commits the offense of burglary in the first degree if he intentionally enters or remains unlawfully in a building, *with intent to commit therein a crime against a person or against property rights, and:*

   (a) He is armed with a dangerous instrument in the course of committing the offense; or

   (b) He intentionally, knowingly, or recklessly inflicts or attempts to inflict bodily injury on anyone in the course of committing the offense: or

   (c) *He recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.*

(2) An act occurs "in the course of committing the offense" if it occurs in effecting entry or while in the building or in immediate flight therefrom.

(3) Burglary in the first degree is a class B felony. (Emphasis added.)

the first degree, in all of its statutory forms, is not significantly less serious than the other crimes enumerated in Act 181. The law has always been jealously solicitous of a person's place of habitation, and the sanctity of one's home is still one of the most cherished and strictly protected rights of a citizen.

In a comparative analysis within this jurisdiction, the defendants point out that excluded from the coverage of Act 181 are certain violent crimes, such as criminal coercion (HRS § 707-724), manslaughter (HRS § 707-702), sodomy in the second degree (HRS § 707-734), rape in the second degree (HRS § 707-731), assault in the second degree (HRS § 707-711), and robbery in the second degree (HRS § 708-841). Most of these are Class B felonies as is burglary in the first degree. But the mere fact of these omissions does not justify a finding that the penalty prescribed with respect to burglary in the first degree is so disproportionate to the conduct charged as to render it cruel and unusual, *cf. Howard v. Fleming*, 191 U.S. 126 (1903), especially in light of the legislature's concern over the danger posed to society by repeat offenders and the frequency of repetition by those previously convicted of burglary offenses.

Proceeding further with their analysis, the defendants also make the representation that while the majority of other jurisdictions have statutes enhancing punishment for felony repeat offenders, only five states make classifications similar to Act 181, and that only one of these five, *see* Massachusetts General Laws Annotated § 266-15, requires a mandatory term of imprisonment of five years for an unarmed but repeat burglary conviction. They have not been able to show, however, how these differences in approach to the common problem of crime in our society are other than constitutional exercises of legislative judgment.

Parole is a matter of legislative grace, and the denial of it to certain offenders is within legislative discretion. *Stewart v. United States*, 325 F.2d 745 (8th Cir. 1964), *cert. denied*, 377 U.S. 937. We find that legislative discretion was reasonably exercised in this case, and accordingly hold that the sentencing of the defendants to a minimum period of incarceration without possibility of parole for a period of five years under

Act 181 does not offend the cruel and unusual punishment provisions of both Federal and Hawaii Constitutions.

Ideally, "society should make every effort to rehabilitate the offender and restore him as a useful member of that society as society's own best protection." *Trop v. Dulles*, 356 U.S. 86, 111 (1958) (Brennan, J. concurring). Deterrence, however, by the threat of punishment and the isolation of the offender while he remains a threat to society and until he is believed to have been rehabilitated is still among the legitimate ends of the criminal process. *Id.*

## II.

The defendants next argue that Act 181 is violative of the defendants' rights to equal protection of the laws. They advance the argument that where a recidivist statute prescribes greater punishment for one class of crime but does not do so for other crimes of equal or greater seriousness, the statute is unconstitutional. They contend that Act 181 is overinclusive in that it places conduct proscribed by HRS § 708-810(1)(c), which does not necessarily require violence or threat of violence as an essential component of the offense, in the same class as other more serious and violent crimes. Conversely, they argue that Act 181 is underinclusive in that the classification fails to include crimes of equal or greater seriousness which involve offenses against the person of the victim. These contentions are without merit.

The Equal Protection Clause mandates that all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed. *State v. Johnston*, 51 Haw. 195, 456 P.2d 805 (1969), *appeal dismissed, sub nom. Johnston v. Hawaii*, 397 U.S. 336 (1970). It does not, however, require that state legislation operate or apply equally upon every citizen of a state. *Stebbins v. Riley*, 268 U.S. 137 (1925). A legislative classification which is reasonable and not arbitrary, and which is based upon some ground of difference bearing a rational relation to the objectives sought to be achieved by the legislation is permissible. *Royster Guano Co.*

*v. Virginia,* 253 U.S. 412 (1920). Thus, discrimination between classes is not per se objectionable, so long as any state of facts reasonably can be conceived to sustain it. *Allied Stores of Ohio v. Bowers,* 358 U.S. 522 (1959). Accordingly, it has been said that "[t]he equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 (1911). And because a statute is presumed to be constitutional,[2] *State v. Baker,* 56 Haw. 271, 535 P.2d 1394 (1975), the party challenging the constitutionality of a statute on equal protection grounds bears the heavy burden of showing that the statute is arbitrary and capricious, and as such, objectionable. *State v. Cotton,* 55 Haw. 148, 516 P.2d 715 (1973).[3]

We do not find the challenged classification in this case to be arbitrary and capricious. Whether a given classification is reasonable or unreasonable must be determined from the facts of the particular case. As the Supreme Court in *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489 (1955), has said:

"The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature

---

[2] "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." New Orleans v. Dukes, 427 U.S. 297, 303 (1976); Massachusetts' Bd. of Retirement v. Murgia, 427 U.S. 307 (1976).

[3] In State v. Cotton, supra, a statute requiring motocyclists to wear goggles under threat of criminal sanction, but not requiring the use thereof by operators of automobiles was challenged on equal protection grounds. In disposing of the defendant's contention, this court found the distinguishing physical characteristics of automobiles, as well as the manner of their operation, to be a sufficient basis for the legislative classification.

may think. *Tigner v. Texas*, 310 U.S. 141. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler v. Dental Examiners*, 294 U.S. 608. The legislature may select one phase of one field and apply a remedy there, neglecting the others. *A.F. of L. v. American Sash Co.*, 335 U.S. 538. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

The legislature was properly concerned with the high and growing incidence of serious crimes committed by repeat offenders.[4] In finding that burglary in the first degree was a "serious and reprehensible" crime and in providing for the offender's special treatment under Act 181, the legislature was obviously motivated not only by the frequency with which the offense was being committed, but also by the acts of violence that have often attended the illegal entry. It must also have been aware that burglaries not infrequently have been prompted by the perpetrator's need to feed other habits of an illicit nature. And the fact that the legislature could have brought other crimes within the purview of Act 181 does not have the effect of rendering the classification defective. A statute does not violate the equal protection clause merely because it could have included other persons, objects, or conduct within its reach. *James-Dickenson Co. v. Harry*, 273 U.S. 119, 125 (1927). "[The legislature] is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest." *Miller v. Wilson*, 236 U.S. 373, 384 (1915). And "[i]f the law presumably hits the evil where it is most felt, it is not to be

---

[4] In echoing the concerns of its constituency, the legislature said:

"[T]he high incidence of repeated offenses by previously convicted persons within the State of Hawaii presents a clear danger to its citizens. In particular, your [conference committee] concurs that necessary steps should be taken so that any person convicted for some of the most serious and reprehensible felonies as defined by the Hawaii Penal Code be sentenced, for each conviction after the first conviction to a mandatory sentence without possibility of parole." 1976 Senate Journal 883, Conf. Com. Rpt. No. 33-76; 1976 House Journal 1141, Conf. Com. Rpt. No. 32-76.

overthrown because there are other instances to which it might have been applied." *Id*. Thus, it was for the legislature to determine the relative seriousness of the various crimes and to provide for more severe punishment, under Act 181, for those offenses it deemed to pose the greatest and most pervasive danger to the well-being of society. *United States v. Beverley*, 416 F.2d 263 (9th Cir. 1969); *People v. Beaty*, 84 Cal. App. 3d 239, 148 Cal. Rptr. 319 (1978); *State v. Maldonado*, 578 P.2d 296 (Mont. 1978); *People v. Czajkowski*, 568 P.2d 23, 25-26 (Colo. 1977); *Commonwealth v. Jackson, supra*.

### III.

The defendants also argue that Act 181 denies them due process of law in that it strips the trial court of sentencing discretion. This contention is without merit.

Prescribing criminal sanctions is properly within the legislative sphere, and establishing a mandatory minimum term of imprisonment for a particular offense is one of the valid options available to the legislature. *Commonwealth v. Jackson, supra; State v. Motley*, 546 S.W.2d 435 (Mo. App. 1976). In this case we find the enactment of Act 181 to have been a reasonable and valid exercise of the legislative option. *Id*.

In *State v. Motley, supra*, the court, sustaining the validity of a statute providing for a mandatory minimum sentence for repeat offenders, over an identical constitutional challenge, stated:

"Thus, the legislature by statutory enactment describes crime and prescribes punishment and for a court to refuse imposition of prescribed penalties by the devise of indefinite suspension of sentence or similar means, would constitute judicial usurpation of legislative power. It is clear that contrary to defendant's contention there has been no usurpation of judicial authority here; indeed, the opposite would occur if a court on conviction refused imposition or ordered indefinite suspension of sentence." 546 S.W.2d at 438.

And in *Commonwealth v. Jackson, supra*, the court, holding valid a minimum mandatory sentencing provision over

defendant's claim that it infringed upon the doctrine of separation of powers, said:

> "[I]n our tripartite system of government it is unquestionable that the Legislature has the authority to determine what conduct shall be punishable and to prescribe penalties [citations omitted]. Although it is the court's function to impose sentences upon conviction, it is for the Legislature to establish criminal sanctions and, as one of its options, it may prescribe a mandatory minimum term of imprisonment [citations omitted]. If we were to conclude that the judiciary could exercise its discretion to suspend imposition or execution of sentence despite statutory proscription, a serious question concerning the separation of powers would arise, for, taking this proposition to its logical extreme, it would mean that the judiciary impliedly possesses the power to nullify the Legislature's authority." 344 N.E.2d at 177.

### IV.

The defendants have further raised the question of whether the term "prior conviction" in Act 181 properly includes convictions which occurred prior to the effective date of the statute. Act 181 became effective on June 1, 1976. Defendant Karren's prior conviction for burglary in the first degree occurred on December 11, 1973. Defendant Freitas' conviction for a similar offense took place on May 30, 1975.

Firstly, we are satisfied from the language of the statute and its legislative history that the legislature did intend that convictions entered prior to the act's effective date were to be considered in the sentencing process under Act 181. The legislature was gravely concerned with the danger posed to society by repeat offenders. It found the danger to be real and the passage of Act 181 to be a necessary and immediate response. The language of the statute is clear, and its enactment served to put previously convicted offenders[5] on notice

---

[5] Act 181 has since been amended to limit the use of prior convictions to "within the time of the maximum sentence of the prior conviction." Act 98, S.L.H. 1979.

that a repetition of the same offense would subject them to a more severe punishment.

Secondly, we find, as other courts have, *see, e.g., Alaway v. United States*, 280 F. Supp. 326 (D. Cal. 1968); *People v. Beaty, supra; State v. Maldonado, supra; State v. Polson*, 93 Idaho 912, 478 P.2d 292 (1972), *cert. denied* 402 U.S. 930; *Ridgeway v. State*, 251 Ark. 157, 472 S.W.2d 108 (1971), that the use of prior convictions to increase punishment for the underlying substantive offense is not violative of the constitutional prohibition against the enactment of ex post facto legislation.[6] Enhanced punishment under a recidivist statute, such as Act 181, is not an additional penalty for the prior crime. Rather, "[i]t is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *State v. Polson, supra*, 478 P.2d at 294.

V.

Having addressed ourselves to the constitutionality of the statute, we turn now to the essentially procedural questions posed by the defendants. It is their contention in this regard that the procedural requirements laid down by this court in *State v. Kamae*, 56 Haw. 628, 548 P.2d 632 (1976), are applicable to proceedings under Act 181. Involved in that case were the application of the extended term statute, HRS § 706-662, and the hearing thereon required under HRS § 706-664.[7] We held in that case that the extended term hearing was

---

[6] The Supreme Court early defined what was meant by an ex post facto law under Article I, Section 10, of the United States Constitution:

"*** 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.***" Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798).

[7] HRS § 706-664 provides:

"The court shall not impose a sentence of imprisonment for an extended term unless the ground therefor has been established at a hearing after the conviction

a *separate criminal proceeding* apart from the trial of the underlying substantive offense. Accordingly, we said that in such proceedings the ordinary rules of evidence would apply and that all issues relevant to the determination of whether an extended term should be imposed must be established by the State beyond a reasonable doubt. *See also State v. Huelsman,* 60 Haw. 308, 588 P.2d 394 (1979). We think, however, that in this case ordinary sentencing procedures should apply. *See State v. Nobriga,* 56 Haw. 75, 527 P.2d 1269 (1974). The ultimate question of whether the defendant should be sentenced to an extended term under HRS § 706-662 is discretionary with the trial court. Act 181, on the other hand, is a mandatory sentencing statute and admits of no such discretion.

We will require nevertheless that before sentence may be imposed under Act 181, the defendant must be given reasonable notice of the intended application of Act 181; he must be given the opportunity to be heard; the fact of his prior conviction must be established by satisfactory evidence; and he must have been represented by counsel (or have knowingly and intelligently waived representation) at the time of his prior conviction.

While due process does not require that notice be given prior to the trial of the underlying offense, it does require that a defendant to be sentenced under Act 181 be given reasonable notice and afforded the opportunity to be heard. *Oyler v. Boles,* 368 U.S. 448 (1962); *Johnson v. Kansas,* 284 F.2d 344 (10th Cir. 1960); *Jackson v. State,* 204 Kan. 841, 466 P.2d 305 (1970). *Cf.* HRS § 706-604; *Freitas v. Gomes,* 52 Haw. 145, 472 P.2d 494 (1970). This notice requirement may, of course, be waived. *Wilson v. Gaffney,* 454 F.2d 142 (10th Cir. 1972), *cert. denied* 409 U.S. 854; *United States ex rel. D'Ambrosio v. Fay,* 349 F.2d 957 (2d Cir. 1965); *State v. Lemon,* 203 Kan. 464, 454 P.2d 718 (1969); *State v. Madrid,* 83 N.M. 603, 495 P.2d 383 (1972). The notice requirements here were satisfied. Defen-

of the defendant and on written notice to him of the ground proposed. Subject to the provisions of section 706-604, the defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue."

dant Freitas was advised by the trial court on March 29, 1978, of the intended application of Act 181. The matter was heard on April 12, 1978. Defendant Karren was notified on April 19, 1978, and his hearing was held on April 26, 1978. No complaint is made by the defendants that they did not have adequate time to prepare for the hearings.

Proof of prior conviction may consist of "any evidence, including fingerprint records made in connection with arrest, conviction, or imprisonment, that reasonably satisfies the [sentencing] court that the defendant was convicted." HRS § 706-666(2). *See* HRS § 622-21; HRS § 806-64; H.R.P.P. Rule 27; H.R.C.P. Rule 44; *Brown v. State,* 570 S.W.2d 251 (Ark. 1978); *Rogers v. State,* 583 P.2d 1104 (Okla. 1978); *State v. Kelley,* 20 Wash. App. 705, 582 P.2d 891 (1978); *State v. Lee,* 114 Ariz. 101, 559 P.2d 657 (1976). In the case of defendant Freitas, the State called as a witness a clerk of the first circuit court who produced the court records and judgment in Cr. No. 47720, Circuit Court of the First Circuit, showing the conviction of one Joseph Freitas, Jr. of burglary in the first degree on May 28, 1975. Certified copies of both the indictment and the judgment in that case were admitted into evidence. To connect defendant Freitas with the judgment of prior conviction, the probation officer assigned to prepare the presentence report in that case testified and identified defendant Freitas as the Joseph Freitas, Jr. convicted and sentenced for burglary in the first degree in the prior proceeding. The evidence adduced was sufficient to prove the fact of the defendant's prior conviction.

In the case of defendant Karren, the State called as a witness a clerk of the third circuit court, who produced the court records and judgment in Cr. No. 4513, Circuit Court of the Third Circuit, showing the conviction of one Kenneth L. Karren for burglary in the first degree on December 11, 1973. Introduced into evidence was a certified copy of the court clerk's minutes noting the defendant's plea of guilty to the charge on November 1, 1973, and his sentencing for the offense on December 11, 1973. Also admitted into evidence were certified copies of the order appointing counsel, the waiver of indictment, the information, the defendant's writ-

ten plea of guilty, and the judgment itself. The State also called as a witness a probation officer who identified the defendant in this case as the Kenneth L. Karren who had been placed under his supervision as a result of his conviction in Cr. No. 4513. The evidence presented was sufficient to prove the fact of defendant Karren's prior conviction.

But in order for a prior conviction to furnish the basis for sentencing under Act 181, the defendant must have been represented by counsel, or must have knowingly and intelligently waived such representation. *Burgett v. Texas*, 389 U.S. 109 (1967); *cf. State v. Kamae, supra.* The defendants do not now claim that they were not so represented in the prior proceedings. Rather, they take the position that the State must prove the representation and that it has failed adequately to do so. This argument is without merit. *Rogers v. State, supra; State v. Lee, supra; In re Beal,* 46 Cal. App. 3d 94, 120 Cal. Rptr. 11 (1975); *People v. Lasky,* 31 N.Y.2d 146, 335 N.Y.S.2d 266, 286 N.E.2d 712 (1972); *Maynard v. State,* 473 P.2d 335 (Okla. 1970).

In the case of defendant Freitas, a clerk of the first circuit court having custody of the court records in Cr. No. 47720, Circuit Court of the First Circuit, was placed on the witness stand to testify that the records which she had brought to court were the court records in Cr. No. 47720. After reviewing these records, the sentencing court made the following determination:

"The records show that defendant pleaded guilty to Burglary in the First Degree on April 29, 1975, and the plea of guilty bears the certificate from his attorney William J. Jenner that he explained everything to him and that he understood the plea of guilty. And all the minutes prepared by the clerk shows the presence of Mr. Jenner for the defendant that I can see. Therefore, I don't see how the court can reach any conclusion except that he was represented by counsel."

This was sufficient, for the purposes of Act 181 proceedings, *cf. In re Beal, supra,* particularly in the absence of evidence to the contrary, to establish the fact that the defendant was represented by counsel at the time of his prior conviction. The

much better practice might have been for the admission into evidence of certified copies of those relevant portions of the court records to which the court referred. This omission, however, was not fatal to the proceedings in this case.

In the case of defendant Karren, a certified copy of the order appointing John Burgess as counsel for the defendant in Cr. No. 4513 was admitted into evidence. Also introduced were certified copies of the waiver of indictment, signed by both the defendant and his assigned counsel, and the defendant's written plea of guilty which contains the following pertinent statements above the defendant's signature:

"2. I have a copy of the indictment or information.

"3. I have read it or I have had it read to me by my lawyer.

"4. I talked with my lawyer about it; he explained it to me.

"5. I understand the charges against me.

"6. I told my lawyer everything I know about the case.

"7. My lawyer gave me advice about the case.

\*   \*   \*   \*

"18. I do not claim to be innocent. I make this plea because my lawyer and I talked about the evidence in my case, about the law in my case, and about other things about my case.

"19. I do not have any gripes or complaints about my lawyer."

Below the defendant's signature is a certificate of counsel executed by John M. Burgess, as attorney for the defendant, approving and concurring with his client's plea of guilty to the charge then pending against him. Such evidence was sufficient to show that defendant Karren was represented by counsel at the time of his prior conviction.

In light of the foregoing, we find that the defendants were properly sentenced under Act 181.

Affirmed.

*Alvin Sasaki*, Deputy Public Defender for defendants-appellants.

*Arthur Ross*, Deputy Prosecuting Attorney for plaintiff-appellee.