Filed 8/19/24  P. v. Williams CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MILES JAMES WILLIAMS,<br><br>    Defendant and Appellant. | 2d Crim. No. B330154<br>(Super. Ct. No. 23CR00323)<br>(Santa Barbara County) |

Miles James Williams appeals a judgment following his conviction of dissuading a witness by use of "threat of force or violence" (Pen. Code, § 136.1, subd. (c)(1)),[1] a felony (count 2); three counts of shoplifting (§ 459.5, subd. (a)) (counts 4, 5, and 6); and trespass (§ 602.1, subd. (a)) (count 7).  The trial court sentenced him to an aggregate prison term of four years.  We conclude, among other things, that: 1) the trial court did not err by instructing the jury with CALCRIM No. 372 (flight showing a consciousness of guilt); and 2) the court did not abuse its

[1] All statutory references are to the Penal Code.

discretion by imposing the upper term of four years for the conviction on count 2.  We affirm.

FACTS

*The CVS Incident*

*(January 2023) (Count 2)*

Blake Kiriakidis was the shift supervisor at CVS.  The store has a policy of giving shoplifters a chance to purchase the items.  Employees are not allowed to "physically engage with them."

Kiriakidis saw Williams put a jacket under his shirt.  He asked Williams to return the item; Williams walked away.  Kiriakidis touched the jacket.  Williams kicked him in the arm causing his coffee cup to fly over an aisle.  He asked Williams to leave the store.  Williams challenged him "to a fight" and said "Fight me, bitch."  He repeated that phrase 5 to 10 times.  Williams "pursued" Kiriakidis, "throwing punches and kicking in the air."  Williams threw punches at him 10 to 20 times.

Kiriakidis called 911.  Williams tried to grab the phone from him.  Williams became "violent," he tried to kick and punch him, and he told Kiriakidis to "get off the phone."  Williams left the store.  He walked 200 to 300 feet to another business.  He then returned to the outside of the CVS store to return the jacket.  Kiriakidis told him to leave the jacket on a bench.  Williams walked away.  He was arrested in front of Vons market.

Williams testified that he did not punch Kiriakidis or make contact with him.  He did not prevent Kiriakidis from calling 911.  He did not try to take his phone away.  He was told to leave by the store employees.  When the CVS employees were on the 911 call, he said, "You can tell them that it's Miles."  He said that to make it easier for them to identify him.  He was not "thinking

clearly" at the time of this incident. There was a moment at CVS when he was thinking of taking the jacket. After his initial contact with Kiriakidis, he was simply trying to return the jacket. When asked whether he kicked the coffee cup, Williams responded, "I felt as though it was an existential threat. It was a threat to me, how he was holding it." During his testimony Williams testified about his prior criminal convictions.

Doctor Rebecca Aponte, a defense forensic psychologist, testified Williams suffers from Bipolar I, a mental disorder. People with this disorder may experience episodes of paranoia or disorganized thinking. When they have such episodes, they may react in an "agitated state" and "react aggressively." They may have delusions about threats that do not exist and aggressively respond. But if they have such an episode, they will not necessarily be "aggressive." Aponte reviewed his medical history. She concluded there was no evidence that Williams had any episodes of "recent hallucinations" or recent delusions.

*Shoplifting at Marshalls*
*(January 13 and 14, 2023) (Counts 4 and 5)*

Nathaniel Dye, a loss prevention employee at Marshalls, testified that Williams committed a theft at the store on January 13. Williams put on a flannel shirt and he left the store with that shirt. Rafael Garcia Aguilar, a loss prevention employee at Marshalls, testified Williams committed a theft at the store on January 14. Williams took a backpack and walked out of the store with it.

*Shoplifting and Trespass at Ralphs*
*(December 2022) (Counts 6 and 7)*

Eric Salmeron, the sales manager at Ralphs, testified that he had to call 911 because of Williams's conduct in December

2022.  He saw Williams grab a bottle of alcohol and attempt to leave the store.  Salmeron contacted Roderick Talbert, the security guard.  Williams had been previously barred from entering Ralphs.  Talbert told Williams to drop the bottle.  Williams did not comply and he became aggressive.  Salmeron reminded Williams that he was not allowed to enter the store.  Salmeron said Williams "wouldn't listen to [him]. . . .  It looked like he wanted to punch [them]."  Williams eventually set the bottle down and walked out of the store.

*The Judgment*

After the jury verdicts convicting Williams on counts 2, 4, 5, 6, and 7, the trial court imposed an aggregate four-year sentence.  The court held a bench trial and found based on court records that Williams served "two prior prison" or county jail terms under section 1170, subdivision (h), and this constituted aggravating sentencing factors under California Rules of Court, rule 4.421(b)(3).[2]  Williams had a mental illness, but he did not fall within the lower term presumption under section 1170, subdivision (b)(2) for psychological trauma for count 2.  It found other aggravating sentencing factors supported the imposition of the four-year high term for count 2.

The trial court found:  "[Williams's] prior convictions as an adult are numerous and increasing in seriousness.  He is engaged in violent conduct that indicates a serious danger to the community . . . .  His prior performance on probation or parole was unsatisfactory."  It found the defense mitigating factors based on mental health and substance abuse were outweighed by "the safety of the public."  It imposed the upper term of four years

---

[2] All references to rules are to the California Rules of Court.

on count 2.  For counts 4 through 7, it imposed a sentence of 180 days to run concurrently.

## DISCUSSION

### *The Jury Instruction*

Williams contends the trial court erred by instructing the jury with CALCRIM No. 372, which provides: "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled or tried to flee cannot prove guilt by itself. [¶] This instruction applies only to Counts 1 through 5."

The trial court overruled the defense objection to this instruction.  Williams argues there was no evidence of "flight" because CVS employees "told [him] to leave."  On the way out he knew there was a 911 call and said, "Tell 'em it's Miles."  The People respond that the crime scene was the store.  He left the store knowing there was a 911 call and walked between 200 and 300 feet away from CVS.

Here there are conflicting inferences regarding why Williams walked away from CVS.  The trial court did not have to resolve them.  It could reasonably allow the triers of fact to do that.  The People did not have to prove flight from CVS.  "To obtain the instruction, the prosecution *need not prove the defendant in fact fled*, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328, some italics added.)

5

Moreover, Williams walked out of Marshalls after taking items without paying. The instruction also applied to these counts.

Williams contends giving the instruction was error because the prosecutor did not rely on his flight from the stores. (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 367.) But the prosecutor said the People intended to rely on Williams's flight, and in the People's opening argument, the prosecutor said, "[Williams] walks out of [CVS] carrying the jacket." "The instruction did not assume that flight was established, but instead permitted the jury to make that factual determination and to decide what weight to accord it." (*People v. Carter* (2005) 36 Cal.4th 1114, 1182-1183, italics added.)

*Imposing the Upper Four-Year Term*

Williams contends the trial court abused its discretion in imposing the upper four-year term on count 2.

Section 1170, subdivision (b)(6)(A) provides, in relevant part, "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

Wiliams argues his "psychological trauma based on his mental illness invoked the lower term presumption in section 1170, subdivision (b)(6)." (Boldface omitted.)

In *People v. Banner* (2022) 77 Cal.App.5th 226, 241, the appellate court held, "[P]sychological trauma based on mental illness may be a circumstance qualifying for the lower term

6

presumption in section 1170, subdivision (b)(6).  To be clear, *we do not hold mental illness alone qualifies* for the lower term presumption. *Psychological trauma must attend the illness, and that trauma must contribute to the crime* under section 1170, subdivision (b)(6)."  (Italics added.)

Aponte testified Williams has a mental illness.  But the trial court found she did not prove he fell within the lower term sentencing provision.  The trial court decides the credibility of the witnesses.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  It determines whether psychological trauma was a contributing factor.  (*People v. Dunn* (2022) 81 Cal.App.5th 394, 410, review granted Oct. 12, 2022, S275655.)  The court found, "[W]ith regard to Dr. Aponte's opinion, I did not find persuasive that his bipolar disorder caused him to be irritable or paranoid resulting in the offense.  I have no doubt that Mr. Willimas suffers from mental health issues.  And I recognize that he has mental health issues.  But I don't find that that's what drove him to commit the crime he was convicted of."

Aponte said Williams had a bipolar disorder.  But the issue was whether Williams suffered a psychological "trauma" at the time he committed the offense, not whether he had a mental illness.  (*People v. Banner*, *supra*, 77 Cal.App.5th at p. 241.)  The trial court could reasonably find her testimony was insufficient on psychological trauma.  Aponte reviewed Williams's medical history.  The CVS incident was recent.  She said there was no evidence that Williams had episodes of "recent hallucinations" or recent "delusions."  The court could reasonably infer that showed Williams was not suffering from an episode of a psychological "trauma" at CVS.  Moreover, the store employees who approached Williams did not create an atmosphere for "trauma."

7

The court said Kiriakidis was "nonconfrontational." Williams testified Kiriakidis "very cordially asked me for the jacket back." Williams's counsel told the jury that because Williams was "seriously mentally ill," he could not be guilty of a felony. The jury's verdict was a rejection of that claim.

In addition, the lower term does not apply where "the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) The court's findings show that it reached the conclusion required by the statute. Its paramount concern for imposing the high term was public safety. The conviction on count 2 and his three prior felony convictions for resisting an officer with force or violence (§ 69) showed a dangerous pattern. The court said, "I have to consider *community safety first*." (Italics added.) Its emphasis on his violent criminal history showed it determined a lower term would be "contrary to the interests of justice." The court found Williams put "individuals and customers in significant danger." Its findings show that it found these aggravating factors outweighed Williams's alleged mitigating factors. (*People v. Osband* (1996) 13 Cal.4th 622, 725; *People v. Castellano* (1983) 140 Cal.App.3d 608, 614-615.)

*Imposing a Sentence Above the Middle Term*

Williams contends the trial court improperly relied on aggravating factors that were not proven by proper evidence which contravened section 1170, subdivision (b)(2).

Section 1170, subdivision (b)(2) provides, in relevant part, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding

8

the middle term and the *facts underlying those circumstances have been stipulated to by the defendant or have been found true* beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Italics added.)

Williams claims the trial court relied on aggravating factors to support a sentence above the middle term that were not based on court records or his stipulation. But Williams concedes that the court relied on "certified records" to find that Williams served two prior prison or county jail terms and they constituted aggravating sentencing factors. (Rule 4.421(b)(3).) "[U]nder amended section 1170(b)(2), a trial court may still impose an upper term sentence based on *one aggravating circumstance* the trial court concludes justifies upward departure from the presumptive middle term maximum . . . ." (*People v. Falcon* (2023) 92 Cal.App.5th 911, 954, italics added, review granted Sept. 13, 2023, S281242; see also *People v. Sandoval* (2007) 41 Cal.4th 825, 839.) Moreover, from properly admitted court records, the trial court found Williams had three prior felony convictions for resisting an officer with force or violence. (§ 69.)

*The Probation Report*

Williams claims the trial court improperly relied on the probation report to find that he engaged in violent conduct that was a danger to society; his convictions were increasing in seriousness; and his performance on probation or parole was unsatisfactory. He notes one court has held the probation report is not a court record that can be considered. (*People v. Dunn*, *supra*, 81 Cal.App.5th at p. 403.) He therefore claims there were no facts that could be considered from that report.

9

*A Forfeited Claim?*

The People's position that this claim was forfeited has merit.  The forfeiture doctrine applies to bar claims on appeal that were not raised by the defendant at the sentencing hearing.  (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. Achane* (2023) 92 Cal.App.5th 1037, 1043; *In re Beal* (1975) 46 Cal.App.3d 94, 100.)  Williams did not object to the trial court's consideration of the probation report at that hearing.  (*Beal*, at p. 100 [defendant waived objection to probation report by not raising it at the sentencing hearing].)  The probation report documented the following aggravating sentencing factors: 1) Williams "inflicted physical injury"; 2) his prior record of criminal conduct "indicates a pattern of . . . increasingly serious criminal conduct"; and 3) his "prior performance on probation and parole was unsatisfactory."

Williams *relied on that probation report* to support his sentencing brief.  He therefore is estopped to claim the trial court erred by relying on it.  (*People v. Gonzalez* (2020) 57 Cal.App.5th 960, 972.)  If he believed some of it was inadmissible, he should have objected in the trial court.  (*In re Beal*, *supra*, 46 Cal.App.3d at p. 100.)  Because he did not object, he may not claim error on appeal.  (*People v. Partida* (2005) 37 Cal.4th 428, 435; *Gonzalez*, at p. 972; *Beal*, at p. 100.)  In *People v. Hall* (2023) 97 Cal.App.5th 1084, 1101, the defendant raised the same issue.  The court held the defendant's claim that the trial court erred by relying on the probation report to make aggravating sentencing factors was forfeited where the defendant failed to object on that ground in the trial court.  (*Ibid*.)

*The Probation Report's Continuing Role in Sentencing*

But even had Williams not forfeited this claim, his contention that a probation report is inadmissible at sentencing

10

is incorrect. The Penal Code authorizes it to be considered by trial judges in making sentencing decisions. (§ 1203, subd. (b)(1).) The statute provides the probation report's "prior history and record of the person" may "be considered either in aggravation or mitigation of the punishment." (*Ibid*.)

Our Supreme Court has held the probation report is admissible in sentencing. (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754, fn. 2.) In *People v. Cheatham* (1979) 23 Cal.3d 829, 836, the court held a "probation report covers not only 'the circumstances surrounding the crime,' but also 'the prior history and record' of the defendant," which the trial court may properly consider. In *People v. Black* (2007) 41 Cal.4th 799, 818, footnote 7, the court held that the trial court's "conclusion that defendant's prior convictions were numerous or of increasing seriousness is supported by the probation report." In *People v. Towne* (2008) 44 Cal.4th 63, 76, the court held a trial court could rely on a probation report listing 10 prior convictions to make a constitutionally adequate aggravating sentencing finding that a defendant's prior convictions were numerous.

The statute provides, "[T]he court may consider the defendant's prior convictions in determining sentencing based on a *certified record of conviction . . . .*" (§ 1170, subd. (b)(3), italics added.) The *Dunn* court interpreted this phrase narrowly to prohibit a probation report from being considered as a qualified record of conviction. (*People v. Dunn*, *supra*, 81 Cal.App.5th at p. 403.) But the statute is permissive not prohibitory, and *Dunn* did not consider section 1203, subdivision (b)(1), which expressly authorizes the court to rely on the probation report for sentencing. Moreover, "[t]he probation report *is part of the superior court record*." (*People v. Sledge* (2017) 7 Cal.App.5th

11

1089, 1096, italics added.) It documents the "circumstances" of the offense. (*People v. Tran* (2015) 242 Cal.App.4th 877, 891.) It is an authorized record of prior convictions. (*People v. Saelee* (2018) 28 Cal.App.5th 744, 756 ["Examples of evidence that have been used to establish a *defendant's criminal history or disciplinary record* include . . . Probation reports" (italics added)].) The probation report is the most important comprehensive document to "assist the court" in sentencing. (Rule 4.411(a)(1)(B).)

The new sentencing statute also specifically authorizes the trial court to consider "the probation officer's report" (§ 1170, subd. (b)(4)), which shows the intent to continue to use probation reports for sentencing decisions. The probation report's lists of prior convictions supports findings on aggravating sentencing factors, and is sufficient to withstand constitutional challenges to its sufficiency. (*People v. Towne*, *supra*, 44 Cal.4th at p. 76.) The report may be relied on for sentencing consistent with the goals of section 1170 because it contains "information that is readily available from official records"; its lists of "prior convictions and probation status are well documented"; it documents "unsatisfactory performance on probation" (*People v. Flores* (2022) 75 Cal.App.5th 495, 501); and it is a part of the court record that provides a basis for sentencing choices. (§ 1203, subd. (b)(1); *Towne*, at p. 76; *People v. Sledge*, *supra*,7 Cal.App.5th at p. 1096.)

The probation report is also essential in determining a defendant's right to a fair sentence. We have held "reliable hearsay statements in a probation report are admissible to show whether a petitioner is eligible for resentencing under Proposition 47" and Proposition 64. (*People v. Hall* (2019) 39

12

Cal.App.5th 831, 838.) In *Hall*, we ruled, "The trial courts' ability to consider reliable hearsay in probation reports is *necessary to assure the fair and efficient* implementation of Proposition 64." (*Id*. at p. 840, italics added.) "In many cases the probation report *will be the only document in the court file setting forth the facts underlying* the marijuana offense to which the Proposition 64 petitioner pleaded guilty." (*Ibid.*, italics added.) Its reliability as a foundation for sentencing has long been established. (*Williams v. New York* (1949) 337 U.S. 241, 249-250; *People v. Shenouda* (2015) 240 Cal.App.4th 358, 368 [facts relevant for sentencing may be found in "the probation officer's report"]; *People v. Ingram* (1969) 272 Cal.App.2d 435, 439; *People v. Hollis* (1959) 176 Cal.App.2d 92, 97.)

Moreover, section 1203 is entitled to statutory priority over section 1170. "[I]f a specific statute is enacted covering a particular subject, the specific statute controls and takes priority over a general statute." (*Estate of Kramme* (1978) 20 Cal.3d 567, 576.) Section 1170, subdivision (b)(2) is a general statute governing the standards for imposing a sentence above the middle term. Section 1203, subdivision (b)(1) is a specific statute governing the use of probation reports in making sentencing decisions on aggravating and mitigating factors. On the issue Williams raises involving the use of probation reports in sentencing, this specific statute takes priority. (*Ibid.*)

The suggestion that section 1170, subdivision (b)(2) is a repeal of the laws that authorize probation reports for sentencing is not persuasive. That section does not mention probation reports or section 1203, subdivision (b)(1). In 2023, the Legislature amended section 1203. But it did not repeal or modify section 1203, subdivision (b)(1). Section 1203, subdivision

13

(b)(1), coupled with section 1170, subdivision (b)(4) [on probation reports], shows a strong legislative intent to maintain and continue the *Arbuckle, Cheatham*, *Black*, and *Towne* line of cases which authorize the use of probation reports in sentencing. Consequently, section 1203, subdivision (b)(1) is the current law and it must be considered with section 1170, subdivision (b)(2). (*People v. Bouzas* (1991) 53 Cal.3d 467, 475; *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 353.)

These two provisions are harmonious which negates the claim that there has been an implied repeal of section 1203, subdivision (b)(1). (*Tan v. Appellate Division of Superior Court* (2022) 76 Cal.App.5th 130, 138.) Probation reports record convictions based on jury verdicts and pleas. Reliance on that type of criminal record history is well established and consistent with the goals of section 1170, subdivision (b)(2). (Rule 4.411(a)(1)(B); *People v. Flores*, *supra*, 75 Cal.App.5th at p. 501.) Lawmakers were also aware of *Arbuckle, Cheatham, Black*, and *Towne*, and the longstanding use of probation reports in sentencing. (Rule 4.411(a)(1)(B).) They could have changed the admissibility of these reports, but they elected not to for good reason. Such a change would have a drastic impact on the ability of sentencing courts to make sentencing choices. (*Williams v. New York*, *supra*, 337 U.S. at pp. 249-250.) It also would render current statutory provisions, which authorize the use of these reports for sentencing, to be meaningless and would lead to a contradictory statutory scheme. We do not interpret statutes to lead to such "absurd results." (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 119.)

In *People v. Flores*, *supra*, 75 Cal.App.5th at pages 500-501, the court considered the impact of Senate Bill No. 567 and section

1170, subdivision (b)(2). It held that a trial court properly relied on the probation report to make findings on the defendant's prior convictions and his performance on probation. (*Flores*, at p. 501.) The Court of Appeal concluded it could determine whether to affirm the judgment by considering the aggravating sentencing circumstances documented in the probation report. It ruled, "The report further established Flores's unsatisfactory performance while on probation." (*Ibid*.) Our Supreme Court denied review and denied a request to depublish the opinion.

In *People v. Falcon*, *supra*, 92 Cal.App.5th at page 942, footnote 10, the court considered section 1170, subdivision (b)(2), and citing *People v. Towne*, *supra*, 44 Cal.4th 63, 76, 82, it ruled, "[W]e presume prior conviction findings made from a probation report would remain *constitutionally* sound."

*Other Issues*

Williams's claim that the trial court exclusively relied on the probation report to make its aggravating sentencing findings is not true. It had independent documentation to support its findings that Williams engaged in violent conduct and that his convictions were of increasing seriousness. From his conviction on count 2 and from properly admitted court records, the court found Williams had three prior felony convictions for resisting an officer with force or violence.

The sentencing statute (§ 1170, subd. (b)(2)) also does not prohibit a defendant from stipulating to facts that constitute aggravating factors. (*People v. Dunn*, *supra*, 81 Cal.App.5th at p. 410.) The prosecutor and defense counsel disagreed about what caused Williams's behavior, but there was no disagreement about Williams being a long time repeat offender. Williams's counsel said Williams was "incarcerated for the majority of his

15

adult life," and "time and time again [Williams] is released from [jail]."

Williams also admitted in his trial testimony that he had a substantial prior criminal record. In 2006, he was convicted of felony stalking. In 2018, he was convicted of assault with force likely to cause great bodily injury. In 2020, he was convicted of grand theft. He admitted that in 2022 he *had three convictions* of resisting arrest by law enforcement "*with violence.*" His criminal history also included prior theft convictions.

*Reliance on Williams's Testimony about Prior Convictions*

The People's claim that the trial court could rely on Williams's trial testimony about his prior record to base its findings on aggravating sentencing factors is correct.

Section 1170, subdivision (b)(2) allows a defendant's stipulation about his or her criminal history to be considered in sentencing. Here Williams voluntarily disclosed his criminal history and testified about it in his defense case. Facts a defendant admits and a defendant's admissions in testimony may be considered in sentencing. (*People v. Sandoval, supra*, 41 Cal.4th at p. 836; *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1102 [a defendant's admissions made prior to a guilty plea may be relied on to find the fact of a prior conviction]; *People v. Harris* (1992) 8 Cal.App.4th 104, 108.) There was no error.

16

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.


17

Von Deroian, Judge

Superior Court County of Santa Barbara

_____

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.